UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24996-CV-MOORE
(17-20081-CR-MOORE)
MAGISTRATE JUDGE REID

ABDUL PIERRELUS,

       Movant,

v.

UNITED STATES OF AMERICA,

       Respondent.

## REPORT OF MAGISTRATE JUDGE

This matter is before the court on Movant's *pro se* Motion to Vacate, filed under 28 U.S.C. § 2255. [Cv-ECF No. 1]. The District Court Ordered the Undersigned to hold an evidentiary hearing regarding whether equitable tolling applied to Movant's untimely motion. [Cv-ECF No. 11]. The Undersigned appointed counsel for Movant and has conducted the hearing. Upon review, the Undersigned finds that Movant has failed to show that he is entitled to equitable tolling. Therefore, Movant's Motion to Vacate should be dismissed as untimely.

### I.    Procedural Background

A.    <u>Underlying Criminal Case</u>

On March 29, 2017, Movant signed a written plea agreement in which he agreed to plead guilty to counts one and five of the indictment. [Cr-ECF No. 37 at 1].[1] Count one charged Movant with conspiracy to fraudulently use unauthorized access devices. [*Id.*] Count five charged Movant with aggravated identity theft. [*Id.*] The plea agreement contained an appeal waiver. [*Id.* at 6].

---

[1] All page citations to ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

1

The Court sentenced Movant and entered judgment on June 1, 2017, imposing a total term of fifty-four months' imprisonment. [Cr-ECF No. 52 at 2]. This term consisted of: (1) thirty months on count one, which was the very low end of the applicable Guidelines range; and (2) a mandatory two-year consecutive sentence on count five. [*Id.*; Cv-ECF No. 43 at 1]. Movant did not appeal.

B.  This § 2255 Case

1.  *Pre-Evidentiary Hearing Proceedings*

On November 14, 2018, Movant filed his § 2255 Motion. [Cv-ECF No. 1 at 12]. Movant asserts the following claims: (1) trial counsel ineffectively allowed him to plead guilty without knowledge of the loss amount that the Government claimed; (2) trial counsel ineffectively failed to object to the loss calculation in the Presentence Investigation Report; (3) trial counsel ineffectively failed to object to a two-point leader enhancement; and (4) collateral counsel ineffectively failed to timely file this § 2255 motion. [*Id.* at 4-8]; *see also* [Cv-ECF No. 3].

The previously assigned Magistrate Judge issued a Report recommending that the Motion be dismissed as untimely. [Cv-ECF No. 5]. The Magistrate Judge found that the judgment of conviction became final on June 15, 2017 and that Movant filed his Motion almost one year and five months later. [*Id.* at 4].[2] Further, the Magistrate Judge found that Movant was not entitled to equitable tolling. [*Id.* at 6]. The Magistrate Judge reasoned that Movant's assertion that his postconviction counsel, Paul Petruzzi, failed to file the Motion even though Movant hired and instructed him to do so was factually unsupported. [*Id.*]

The Court declined to adopt the Report. [Cv-ECF No. 11]. The Court found that an evidentiary hearing was necessary to determine whether: (1) Movant diligently pursued his rights;

---

[2] Neither party has disputed this finding and the Undersigned adopts it for the purposes of this Report.

and (2) Mr. Petruzzi's conduct constituted professional misconduct arising to the level of an extraordinary circumstance. *See* [*id.* pp. 2-3].

2.  *Evidentiary Hearing*

The Undersigned held an evidentiary hearing on December 19, 2019. [Cv-ECF No. 37]. Orlando do Campo represented Movant. Frank Tamen, Assistant United States Attorney, represented the Government. Mr. Tamen stated at the hearing that the Government's position was that Movant's Motion was untimely and that equitable tolling did not apply. Mr. do Campo called Movant and his wife, Lourdjine Jadotte. Mr. Tamen called Mr. Petruzzi.

**a.     Movant's Testimony**

After Movant was sentenced in June 2017, he told his wife to hire Mr. Petruzzi to file a § 2255 motion. Mr. Petruzzi and Mrs. Jadotte signed the fee agreement on October 19, 2017. [Cv-ECF No. 44-1 at 2]. The fee agreement states that Movant was hiring Mr. Petruzzi to seek a motion for sentence reduction under Fed. R. Crim. P. 35 or file a § 2255 motion. [*Id.* at 1]. Further, the fee agreement states that, after speaking with Mr. Petruzzi, Movant had to decide in writing which option he wished to pursue. [*Id.*]

Mr. Petruzzi advised Movant that he should try to cooperate, and Movant followed this advice. In December 2017, Movant believed that he did not have a chance to obtain Rule 35(b) relief based on the Government's unfavorable assessment of his cooperation. [Cv-ECF No. 45-1 at 1]. Therefore, Movant told his wife to tell Mr. Petruzzi that he wanted him to file a § 2255 motion. Petruzzi told her to have Movant call him so that he could speak with Movant directly about the matter.[3]

---

[3] It is unclear from Movant's testimony when he told his wife to tell Mr. Petruzzi that he wanted him to file the Motion and when Mr. Petruzzi told his wife to have Movant call him. If Movant's testimony is believed, these events must have occurred between December 2017 and March 2018. As discussed below, Mrs. Jadotte testified that these events occurred in March 2018. Therefore, there is no clear testimony that Movant or Mrs. Jadotte instructed Mr. Petruzzi to

Starting in January 2018, Movant called Mr. Petruzzi on several occasions. He had several short conversations with Mr. Petruzzi's assistant lasting under a minute. Movant believes he spoke with Mr. Petruzzi on March 6 and March 9 of 2018, at which times he told him that he wanted him to file the § 2255 Motion.

In support, Movant submitted prison telephone records. [Cv-ECF No. 44-1 at 3-6]. The records show that Movant placed 8- and 10-minute calls on, respectively, March 6 and 9. [*Id.* at 4]. Further, they show that, consistent with his testimony, he placed several short calls between January and March/April 2018. [*Id.* at 3-5]. The records do not show to whom Movant placed the calls. *See generally* [*id.*]. Based on these communications, starting in March 2018, Movant believed that Mr. Petruzzi was preparing his § 2255 Motion. On July 25, 2018, after the expiration of the statute of limitations, Movant wrote Mr. Petruzzi a letter inquiring about the status of his Motion. [Cv-ECF No. 44-1 at 8].

On October 1, 2018, Mr. Petruzzi sent Movant a letter. [*Id.* at 14-15]. The letter states that: (1) Movant initially retained him to seek Rule 35(b) relief; (2) Movant asked him to consider filing a § 2255 Motion after Movant's attempts to cooperate "fell on deaf ears"; (3) he told Movant that, at that point, the statute of limitations had expired and Mr. Petruzzi had yet to receive Movant's files; (4) he told Movant that he might be able to proceed if he could show equitable tolling; (5) having finally received Movant's files, Movant could not show equitable tolling; and (6) in any event, Movant did not have any meritorious arguments to raise in a § 2255 Motion. [*Id.* at 14]. Further, the letter states that Movant should "not alienate the government and continue to focus [his] time and energy [on] cooperation." [*Id.* at 15].

---

file a § 2255 Motion before March 2018. To the extent Movant so testified, Mrs. Jadotte contradicted this testimony, calling into question its credibility.

After receiving this letter, Movant contacted Mr. Petruzzi and told him that he thought his § 2255 Motion was "in process." Mr. Petruzzi told him that they were going to proceed with cooperation. Then, on October 10, 2018, Movant sent Mr. Petruzzi a letter with information relevant to cooperation. [Cv-ECF No. 45-1 at 4]. Movant was trying to get cooperation again because Mr. Petruzzi failed to file the Motion.

Movant filed his § 2255 Motion *pro se*, "with the help of a fellow inmate." He had never filed such a Motion. It took him "some time to find the right people to help" him file the Motion. Movant filed it "as quickly as he could." Movant reiterated that, from March 2018, he believed Mr. Petruzzi was working on his Motion and did not learn that he was not until October 1, 2018.

**b.    Mrs. Jadotte**

Movant was unhappy with his sentence, so he told Mrs. Jadotte to hire Mr. Petruzzi, who told her that seeking cooperation was the best option. In March 2018, Movant told Mrs. Jadotte that "they were taking so long to never do anything [sic] about his case," so he told her "to move on to the next step." At that time, Mrs. Jadotte contacted Mr. Petruzzi and told him that Movant said to "move on with the [§] 2255 [Motion]." Mr. Petruzzi told her to have Movant call him so he could "hear it directly from him." Mrs. Jadotte would give Mr. Petruzzi information relevant to cooperation. At some point, Mr. Petruzzi told her that he did not have information regarding Movant's case. Therefore, she emailed it to him.

**c.    Mr. Petruzzi**

Movant hired him through Mrs. Jadotte. Mr. Petruzzi advised Mrs. Jadotte that filing a § 2255 Motion would be a "longshot." Further, he advised her that Movant could not simultaneously "get credit for cooperation and litigate against the government."

Movant, who had started cooperating before he retained Mr. Petruzzi, "elected to continue cooperating with the government." Movant told Mr. Petruzzi this during a phone call. In addition to the calls that Movant testified to, Movant and Mr. Petruzzi had "several counselor calls," i.e., private calls that Movant's counselor arranged. In Mr. Petruzzi's opinion, it is possible that the prison does not keep records of counselor calls.

Movant's efforts to cooperate "sort of fell apart" in late 2017/early 2018 because of the Government's negative assessment of the cooperation. However, Mr. Petruzzi believed that there was still a chance to cooperate because Movant could still provide valuable information that the prosecutor would consider. Mr. Petruzzi told Movant that he was working on cooperation and to be patient.

Mr. Petruzzi had a phone conversation with Movant sometime between March and June 2018. Movant was getting impatient because he had yet to receive Rule 35(b) relief. Although they knew that the statute of limitations for a § 2255 Motion would soon expire, Mr. Petruzzi advised him to keep cooperating because filing the Motion "would ruin his chances at cooperation [as] he had already elected . . . to do pursuant to [their] fee agreement." Movant did not instruct Mr. Petruzzi to file a § 2255 Motion. He merely "expressed his dissatisfaction that things were taking so long." Movant said "okay" and Mrs. Jadotte continued to collect information concerning cooperation.

Mr. Petruzzi was surprised and annoyed by Movant's July 25, 2018 letter inquiring about a § 2255 Motion. The letter, which "came out of left field," represented a "180 degree change in [Movant's] position." Mr. Petruzzi arranged a counselor call with Movant after receiving this letter. Movant complained that nothing was happening with cooperation. In contrast to the July 25 letter, Movant did not clearly state that he was no longer interested in cooperation and wanted Mr.

Petruzzi to file a § 2255 Motion. Rather, he said that other prisoners were telling him to file a § 2255 Motion. But Movant ended up agreeing that cooperation was the better option because he could still provide valuable information.

Mr. Petruzzi gave the Government the information about cooperation that Movant provided in the October 10, 2018 letter. Likewise, he gave the Government the information provided in an October 18, 2018 email from Mrs. Jadotte, to which the Government was "very receptive." [Cv-ECF No. 46-6]. Additionally, Mr. Petruzzi gave the Government information about cooperation that Movant provided in fall or winter 2018. [Cv-ECF No. 46-7]. Likewise, Mrs. Jadotte gave Mr. Petruzzi discovery from Movant's previous attorney on August 20, 2018. [Cv-ECF No. 46-4].

Movant did not tell Mr. Petruzzi to file a § 2255 Motion at any time during his representation, whether verbally or in writing. Mr. Petruzzi sent the October 1, 2018 letter telling Movant that any § 2255 motion would be time-barred and futile and that he should continue cooperating in response to a phone conversation they had in September 2018. This call might have been a counselor call.

**d.     Credibility Determination**

Credibility determinations of witness testimony in a § 2255 proceeding are generally made by "weigh[ing] the testimony of all of the witnesses, taking into account relevant factors such as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand[.]" *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (*per curiam*) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (stating that demeanor, vocal inflection, the consistency or inconsistency of testimony, and the internal plausibility or implausibility of testimony are relevant considerations when determining witness credibility).

Here, the Undersigned finds Mr. Petruzzi's testimony credible and the relevant aspects of Movant's and Mrs. Jadotte's testimony incredible. The fee agreement states that Movant retained Mr. Petruzzi to file a § 2255 motion or seek Rule 35(b) relief, and that Movant should decide which option to pursue in writing. According to each witness, Mr. Petruzzi advised Movant to cooperate. While neither Movant nor Mrs. Jadotte provided the written decision, each witness testified that Movant and Mrs. Jadotte started pursuing cooperation. *See* [Cv-ECF No. 45-1 at 1]. Therefore, the testimony and evidence show that Movant, at least initially, retained Mr. Petruzzi to seek cooperation.

However, in the declaration he submitted with his § 2255 Motion, Movant inconsistently states that Mr. Petruzzi "promised" to file a § 2255 Motion at the outset of his representation. [Cv-ECF No. 3 at 2]. Likewise, Movant states in his declaration that he "specifically mandated [Mr. Petruzzi] to file a [§ 2255 Motion] . . . seven months prior to the expiration of the [statute of limitations]." [*Id.* at 3]. Seven months prior to the expiration of the statute of limitations roughly corresponds to the October 2017 initiation of Mr. Petruzzi's representation. However, Movant and his wife later testified that Movant did not specifically instruct Mr. Petruzzi to file a § 2255 Motion until March 2018.[4] These unexplained inconsistencies damaged Movant's credibility.

Further, the Undersigned finds incredible Movant's assertion that he specifically instructed Mr. Petruzzi to file a § 2255 Motion in March 2018. Mr. Petruzzi disputed this testimony and the Government's evidence supported Mr. Petruzzi's testimony, which did not contain any apparent inconsistency with the evidence or court file.

Movant will contend that the telephone records substantiated his testimony that he instructed Mr. Petruzzi to file the motion in March 2018. However, whether Movant spoke with

---

[4] As discussed above, there is no credible testimony that Movant or Mrs. Jadotte instructed Mr. Petruzzi to file a § 2255 Motion before this date. *See supra* n.3.

8

Mr. Petruzzi in March is not the key issue. Indeed, Mr. Petruzzi testified to communication between the two, including one or more calls in the March-to-June 2018 period. Rather, the issue is whether Movant expressly instructed Mr. Petruzzi to file the Motion at that or any other time before the expiration of the statute of limitations. The Undersigned finds that he did not in view of: (1) Mr. Petruzzi's testimony contradicting this assertion; and (2) the unexplained inconsistency discussed above.

Other considerations indicate that Movant did not direct Mr. Petruzzi to file a § 2255 Motion before--or even after--the expiration of the statute of limitations. Again, the testimony and evidence show that Movant hired Mr. Petruzzi to seek cooperation. Movant has not adequately explained why, if Mr. Petruzzi initially convinced him to seek cooperation, Mr. Petruzzi could not have done so again in the spring of 2018, as Mr. Petruzzi testified that he did.

True, Movant grew dissatisfied with the delay in obtaining Rule 35(b) relief. Furthermore, the Government unfavorably assessed the information Movant provided in late 2017/early 2018. Movant will contend that these events changed his opinion about the viability a § 2255 Motion.

However, Mr. Petruzzi testified that he initially advised Movant that such a Motion would be a longshot, and the record supports the reasonableness of his advice considering that: (1) Movant pleaded guilty; (2) the plea agreement contained an appeal waiver; (3) Movant did not appeal; and (4) Movant received a sentence at the very low end of the Guidelines. Movant has not adequately identified any meritorious issue(s) for such a Motion or even attempted to explain how this advice was unreasonable. Furthermore, Mr. Petruzzi testified that he believed cooperation was still a possibility because Movant could still provide valuable information that the prosecutor would consider. And Movant and his wife ended up providing more information about cooperation, which supports this testimony.

Movant will contend that they did not provide this information until after the expiration of the statute of limitations. But this does not change the fact that such information existed. Therefore, Movant would have known in March 2018 that the possibility of cooperation still existed--just as he knew when he retained Mr. Petruzzi to seek such relief. Because he would have so known, and because he had no meritorious issue for a § 2255 Motion, it is reasonable to infer that he would have agreed to Mr. Petruzzi's advice to continue cooperating.

Movant's efforts to cooperate after the expiration of the statute of limitations cast further doubt on his testimony that he instructed Mr. Petruzzi to file a § 2255 Motion in March 2018. Movant testified that he wanted him to file the Motion because, based on the Government's assessment of his cooperation up to that point, he no longer had a chance to obtain Rule 35(b) relief. However, the testimony and evidence show that Movant sought such relief into late 2018. True, Movant contends that he did so only because he learned that Mr. Petruzzi failed to file the § 2255 Motion. But Movant has not adequately explained why, if he believed that he had no chance to obtain Rule 35(b) relief, he continued trying to cooperate. Mrs. Jadotte sent Mr. Petruzzi case-related information even after Movant filed his *pro se* § 2255 Motion in November 2018. In short, the testimony and evidence compel the conclusion that Movant believed he still could obtain Rule 35(b) relief and wanted Mr. Petruzzi to pursue this option.

In sum, Undersigned finds that Movant retained Mr. Petruzzi to seek Rule 35(b) relief. Further, the Undersigned finds that Movant did not instruct Mr. Petruzzi to file a § 2255 Motion in March 2018 or at any other time. Additionally, the Undersigned finds that, although Movant grew dissatisfied with his delay in obtaining Rule 35(b) relief and raised the possibility of filing a § 2255 Motion, Mr. Petruzzi advised him that he should continue to cooperate because it was his

best--and only viable--option for sentence mitigation. Finally, the Undersigned finds that Movant has not shown that this advice was unreasonable.

## II. Discussion

Section 2255 is subject to equitable tolling. *See Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000). Equitable tolling is proper only if the movant shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted). "[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008) (*per curiam*) (citation omitted).

"'The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.'" *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting *Holland*, 560 U.S. at 653). To meet this standard, the movant must, at a minimum, show that he took steps "to ensure that his petition was timely filed." *McBee v. Warden*, 671 F. App'x 763, 764 (11th Cir. 2016) (*per curiam*) (citing *Holland*, 560 U.S. at 653). Thus, a movant cannot meet this standard where the record reflects "nearly complete inaction" between the time the conviction became final and the filing of the § 2255 motion. *Melson v. Comm'r, Ala. Dep't of Corr.*, 713 F.3d 1086, 1090 (11th Cir. 2013) (*per curiam*).

Regarding extraordinary circumstances, "an attorney's negligence, even gross negligence, or misunderstanding about the law is not by itself a serious instance of attorney misconduct for equitable tolling purposes." *Cadet*, 853 F.3d at 1237. However, "abandonment of the attorney-client relationship . . . or some other [egregious] professional misconduct" may satisfy this standard. *See id.* at 1223, 1227.

Here, Movant has not met either prong of the test. Movant did not pursue his right to file a § 2255 Motion diligently because he did not take any steps to file the Motion until after the expiration of the statute of limitations. This is hardly surprising considering that, although he raised the possibility of filing such a Motion with Mr. Petruzzi, he chose to seek cooperation.

In fact, Movant would not be able to show due diligence even had he instructed Mr. Petruzzi to file the Motion in March 2018. At best, the testimony and evidence show that the only step he took to ensure that Mr. Petruzzi filed the Motion was to place several unanswered calls to him in the March-to-June 2018 period. Movant did not testify that, during this period, he sent Mr. Petruzzi a letter or otherwise attempted to contact him. For instance, although Mrs. Jadotte would contact Mr. Petruzzi via email, Movant did not submit evidence of any email communications regarding the status of his Motion. Nor did Movant testify that he attempted to contact the Court to see if Mr. Petruzzi had filed the Motion. Although Movant vaguely testified that he did not understand the legal system, simply trying to contact the Court about the status of a motion does not require advanced legal knowledge. *Cf. Holland*, 560 U.S. at 636-37, 653 (finding due diligence when the prisoner "not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts . . . and the Florida State Bar Association in an effort to have [his attorney] . . . [with whom communication had broken down] removed from his case.").

Furthermore, Movant has not shown that extraordinary circumstances prevented him from timely filing his Motion. As noted, Mr. Petruzzi advised Movant to cooperate in lieu of filing a § 2255 Motion and convinced him that this was the best option to pursue. Movant has not shown that Mr. Petruzzi's representation was unreasonable, much less that it constituted egregious professional misconduct warranting equitable tolling.

In sum, Movant has not shown due diligence or extraordinary circumstances. Hence, he is not entitled to equitable tolling and his Motion to Vacate should be dismissed as untimely.

### III.     Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing § 2255 Proceedings. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." R. 11(b), Rules Governing § 2255 Proceedings.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Undersigned denies a certificate of appealability. If Movant disagrees, he may so argue in any objections filed with the Chief District Judge.

### IV.     Recommendations

Based on the above, it is **RECOMMENDED** that Movant's Motion to Vacate [Cv-ECF No. 1] be **DISMISSED** as untimely; that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this Report may be filed with the Chief District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the Chief District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 27th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

Copies furnished:

Orlando do Campo
do Campo & Thornton, P.A.
Chase Bank Building
150 S.E. 2nd Avenue
Suite 602
Miami, FL 33131
Email: od@dandtlaw.com

Frank Tamen
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
Email: Frank.Tamen@usdoj.gov

Brian Jay Shack
United States Attorney's Office
99 N.E. 4th Street
Office 630
Miami, FL 33132
Email: brian.shack@usdoj.gov

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov